UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NAES CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-00201-NT |
| ) | |
| COASTAL RESOURCES OF MAINE, ) | |
| LLC, ) | |
| ) | |
| Defendant ) | |

**ORDER ON MOTION FOR ATTACHMENT
AND ATTACHMENT ON TRUSTEE PROCESS**

Plaintiff asserts claims for breach of contract and quantum meruit against Defendant arising out of services Plaintiff provided in connection with Defendant's municipal waste processing facility.

Plaintiff moves for an attachment and attachment on trustee process, through which motion Plaintiff seeks an attachment in the amount of $1,226,903.54. (Motion, ECF No. 5.) Following a review of the record and after consideration of the parties' arguments, the Court grants Plaintiff's motion.

**FACTUAL BACKGROUND**

Defendant owns a 144,000-square-foot municipal waste processing facility in Hampden, Maine (the "Facility"). (Affidavit of Dean Blaha (Affidavit) ¶ 4, ECF No. 5-1.) Plaintiff is a services company for domestic and international third-party power generation

facilities and provides operations, maintenance, construction, engineering, and technical support to build, operate, and maintain energy facilities. (*Id.* ¶ 5.)

In November 2017, Defendant retained Plaintiff to provide various services at the Facility, including, but not limited to, providing personnel to operate and maintain the Facility. (*Id.* ¶ 6.) Plaintiff provided all the labor, professional, supervisory, and managerial personnel required to operate the Facility on Defendant's behalf. (*Id.*)

Defendant and Plaintiff executed an Operating and Management Services Agreement (the "Agreement") setting forth the terms, conditions, and scope of work regarding Plaintiff's services at the Facility. (*Id.* ¶ 7; Reply Affidavit of Dean Blaha (Reply Affidavit) ¶ 6, ECF No. 17-1.) Pursuant to the Agreement, Plaintiff managed the day-to-day operations and maintenance of the Facility. (Affidavit ¶ 8.) At one point, Plaintiff employed approximately 55 individuals at the Facility. (*Id.*)

Plaintiff maintains that Defendant agreed to pay in advance, on a monthly basis in accordance with an agreed-upon operating and maintenance budget, Plaintiff's reasonably anticipated operating costs, including, but not limited to, all Facility personnel wages and benefits and costs for third party providers of goods and services. (*Id.* ¶ 9.) Pursuant to that agreement, at the end of each month, Defendant and Plaintiff would reconcile the operating and other costs incurred by Plaintiff during the month. (*Id.*)

Defendant also agreed to pay Plaintiff an annual management fee. (*Id.* ¶ 10.) Pursuant to the terms of the Agreement, during the relevant time period the management fee was $10,000.00 per month. (*Id.*) Plaintiff asserts that it performed all services within

its scope pursuant to the Agreement and in accordance with Defendant's directions.  (*Id*. ¶ 11.)

In May 2018, Defendant and Plaintiff also entered into an Accounting Services Agreement through which Plaintiff was to provide certain accounting services in support of Defendant's accounts with certain suppliers of household waste from participating municipalities.  (*Id*. ¶ 12; Reply Affidavit ¶ 7, Ex. 3.)  Pursuant to the Accounting Agreement, Defendant was to compensate Plaintiff $6,300.00 per month (subject to annual rate increases and potential adjustment based on the actual amount of time required for Plaintiff's personnel to perform the support service), plus reimbursement for out-of-pocket expenses.  (Affidavit ¶ 13.)

Plaintiff contends that although it performed work pursuant to the terms of the agreements from December 2017 to present, Defendant has not paid Plaintiff all amounts due under the agreements.  (*Id*. ¶ 14.)  Plaintiff claims that as of June 1, 2020, Defendant owes not less than $1,226,903.54[1] for expenses and services (mostly for wage and benefit amounts paid by Plaintiff to its employees).  (*Id*. ¶ 15.)

In early June 2020, Plaintiff ceased substantial work at the Facility pursuant to the terms of the Agreement and expected to wind-down all work at the Facility by July 1, 2020.  (*Id*. ¶ 17.)[2]

---

[1] Plaintiff sent Defendant a default notice dated March 16, 2020, detailing a total of $1,064,545.71 in arrearages.  (Reply Affidavit ¶ 8, Ex. 4.)

[2] On July 30, 2020, the state court (Penobscot County Superior Court) appointed a receiver for the Facility upon an application by U.S. Bank, N. A., alleging that Defendant has defaulted on various solid waste revenue bonds and related security agreements.  (Order Appointing Receiver, Civil Action No. CV 20 93, ECF No. 18-1.)  The parties here then requested, and this Court granted, a stay of scheduling order deadlines

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 64 and District of Maine Local Rule 64, the Court applies Maine law when presented with a motion for attachment and attachment on trustee process. To obtain an attachment or an attachment on trustee process, a plaintiff must demonstrate "that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." M.R. Civ. P. 4A(c), 4B(c). A motion for an attachment or an attachment on trustee process must be accompanied by an affidavit or affidavits setting forth "specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief; and so far as upon information and belief, shall state that the affiant believes this information to be true." M. R. Civ. P. 4A(i), 4B(c).

Defendant argues that the initial affidavit of Dean Blaha, Plaintiff's Vice President of Operations, submitted in support of Plaintiff's motion, is insufficient to support the motion because the form of oath sworn by Mr. Blaha does not comply with the requirements of M. R. Civ. P. 4A(i), 4B(c). Maine's attachment rules require Mr. Blaha to swear that his factual allegations are made upon his "own knowledge, information or belief," and if made on information and belief, Mr. Blaha is required to state that he "believes [the] information to be true." M.R. Civ. P. 4A(i), 4B(c).

---

and the deadline for Plaintiff to file a response to Defendant's counterclaim. The Court recently lifted the stay to address Plaintiff's attachment motion. (Order, ECF No. 33.)

At the start of the affidavit, Mr. Blaha avers that after "being duly sworn and under oath," "the following is true and correct." (Affidavit at 1.) In paragraph 2, Mr. Blaha states, "[a]ll facts set forth herein are based on my personal knowledge and/or on my personal review of information supplied to me by others within NAES." (Affidavit ¶ 2.) He also asserts that he is the custodian of NAES's records and that he relied upon NAES's business records. (Affidavit ¶ 3.) In addition, the jurat, acknowledged by a notary public, provides: "Personally appeared the above-named, Dean Blaha and made an oath that the foregoing statements were true based on his personal knowledge." (Affidavit at 6.)

The record establishes that Mr. Blaha made the statements based upon his personal knowledge. *See, e.g., U.S. v. Nugent*, No. 5:16-CV-61294-CIV-380-JMH, 2017 WL 4249775, at *4 (E.D. Ky. Sept. 25, 2017) ("Personal knowledge can derive from a review of business records.") (collecting cases); *Kelecseny v. Chevron USA, Inc.*, No. 08-61294-CIV-ALTONAGA, 2009 WL 10667062, at *6 (S.D. Fla. June 4, 2009) ("personal knowledge, as innumerable decisions from the federal courts make clear, may be gleaned from a review of records pertinent to a given case."). When "it is clear that the affidavit is based upon an affiant's personal knowledge, the affidavit need not include a separate statement that the affiant believes the information to be true." *Spickler v. Dube*, 635 F. Supp. 317, 321 (D. Me. 1986). In short, the affidavit complies with the applicable rules.

Defendant also suggests that Plaintiff's motion should fail because Plaintiff did not include with its motion and supporting documents the agreements between the parties. First, Mr. Blaha sets forth the material terms of the agreement in his affidavit and thus the material terms, as identified by Plaintiff, are part of the record. Defendant does not

5

controvert the terms as described by Mr. Blaha. The rules do not require Plaintiff to include the applicable written agreements in order to prevail on its attachment motion. Furthermore, Plaintiff submitted with its reply copies of the documents as attachments to his reply affidavit. As this Court has noted that while "Rules 4A and 4B do not expressly permit a plaintiff to file a reply or supplemental affidavit in support of a motion for attachment and trustee process and Maine's case law touching upon any such practice is inconclusive," it would "not serve the interests of the just, speedy, and inexpensive determination of this action to analyze the sufficiency of [Plaintiff's] motion for attachment and trustee process in the absence of this affidavit, only to have to possibly reconsider it at a later date with the affidavit." *Hancock Lumber Co., Inc. v. Carbary*, No. 1:11-cv-317-NT, 2012 WL 315645, at *1 (D. Me. Feb. 1, 2012) (internal quotation marks and citations omitted). Accordingly, to the extent the contracts are necessary to support Plaintiff's motion, Plaintiff has provided the agreements.

Although Defendant does not directly controvert Plaintiff's assertions as the services rendered and amount due under the parties' agreement, Defendant contends an attachment is not warranted because any amount owed by Defendant is offset by the amount Defendant would recover on its counterclaim. "Defendant's filing of a counterclaim, however, would not affect Plaintiff's entitlement to an attachment as on offset based on a counterclaim is not appropriate." *Siefken v. Group Home Found. Inc.*, No. 1:15-cv-00209-GZS, 2015 WL 5178067, at *2 n.7 (D. Me. Sept. 4, 2015), citing *Casco N. Bank, N.A. v. New England Sales, Inc.*, 573 A.2d 795, 797 (Me. 1990) (defendant claiming likely recovery against plaintiff on counterclaim "might have demonstrated that

6

it was entitled to an attachment … on its own claim," but "its possible recovery on the claim could not be considered as a offset" to plaintiff's attachment).[3]

The record evidence shows that Plaintiff provided services to Defendant pursuant to the parties' agreements, that Defendant has not paid for all the services, and that Defendant owes Plaintiff at least $1,226,903.54 under the terms of the parties' agreements. Plaintiff, therefore, has demonstrated that it will more likely than not succeed on its claims against Defendant and recover at least $1,226,903.54.  Accordingly, Plaintiff is entitled to an attachment and an attachment on trustee process in that amount.

## CONCLUSION

Based on the foregoing analysis, the Court grants Plaintiff's Motion for Attachment and Attachment on Trustee Process.  The Court orders Plaintiff shall have an attachment and attachment on trustee process on Defendant's property in the amount of $1,226,903.54.

## NOTICE

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of December, 2020.

---

[3] Even if the Court considered Defendant's counterclaim, Defendant has provided no record evidence to support the allegations included in the counterclaim.